1
2
3
4

Mark Aussieker
8830 Olive Ranch Lane
Fair Oaks, CA 95628
Phone: 916-705-8006
aussieker1@gmail.com

*in pro per*

**FILED**

MAY 15 2019

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
              DEPUTY CLERK

5
6
7
8
9

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

2:19 - CV . 0 8 6 8 MCE        PS

10
11
12
13
14
15

Mark Aussieker,

        Plaintiff,

    v.

Eric Nelson, American Consumer Rights
Organization , Bruyette and
Asscociates, BLS Tristar(s)

No.

**COMPLAINT FOR DAMAGES**
Trial by Jury not requested

16

17     Plaintiff MARK AUSSIEKER ("Plaintiff"), on behalf of himself alleges as follows:

18           1.     Plaintiff Mark Aussieker ("Plaintiff" or "Mr. Aussieker") brings this action to

19     enforce the consumer-privacy provisions of the Telephone Consumer Protection Act "TCPA",

20     47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage

21
22     about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin.*

23     *Servs., LLC,* 132 S. Ct. 740, 745 (2012).

24           2.     Upon information and belief, Defendants have jointly and severally

25     placed telemarketing calls to a telephone number Mr. and Mrs Aussieker had registered on

26     the national Do Not Call Registry without consent. As a result, Defendants are liable for

27     those calls.

28

1

1

**PARTIES**

2     3.     Plaintiff Mark Aussieker is an individual and resident of the state of California.

3     4.     Defendant Eric Nelson whose identity and address is not completely known to

4

the Plaintiff.

5

6     5.     Defendant American Consumer Rights Organization, LLC is a Tennessee Non-

7     profit who registered its agent as American Consumer Rights Organization, LLC to be

8     served through its registered agent at 4636 LEBANON PIKE # 341 HERMITAGE, TN 37076

9     6.     Defendant Roy Bruyette is an individual and the the manager of BRUYETTE

10    & ASSOCIATES, LLC who can be served at 3692 Okeechobee Circle Casselberry, FL 32707

11    7.     Defendant of BRUYETTE & ASSOCIATES, LLC is Florida LLC  who can

12

thru its agent Roy Bruyette  at 3692 Okeechobee Circle Casselberry, FL 32707

13

14    8.     Defendant BLS Tristar Consumer Group, an unknown business association

15    with an address of PO BOX 1070 Locust Grove, GA 30248.

16                              **Jurisdiction & Venue**

17    9.     The Court has federal question subject matter jurisdiction over these

18    TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

19    10.    Venue is proper pursuant to 28 U.S.C. § 1391 (b)(2) because the Plaintiff is

20
      a resident of this district, which is where he received the illegal telemarketing calls that are
21
      the subject of this lawsuit.
22

23    11.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a

24    substantial part of the events or omissions giving rise to the claims occurred within this

25    District.

26    12.    This Court has personal jurisdiction over the parties because Defendants

27
      systematically and continually have conducted business in the State of California.
28

2

1    Likewise, Plaintiff's rights were violated in the State of California and his claims arose out

2    of his contact with Defendants from California.

3                                    **TCPA Background**

4    13.      TCPA Background In 1991, Congress enacted the TCPA to regulate the

5    explosive growth of the telemarketing industry. In so doing, Congress recognized that

6    "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone

7

8    Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. §

9    227).

10

11   **THE TCPA PROHIBITS TELEMARKETING CALLS TO NUMBERS LISTED ON THE**

12   **DO NOT CALL REGISTRY, UNLESS THE CALLER HAS THE RECIPIENT'S SIGNED,**
                                **WRITTEN CONSENT.**

13       14.      The national Do Not Call Registry allows consumers to register their telephone

14   numbers and thereby indicate their desire not to receive telephone solicitations at those

15
     numbers. *See* 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored
16

17   indefinitely, or until the registration is cancelled by the consumer or the telephone number is

18   removed by the database administrator." *Id.*

19       15.      The TCPA and implementing regulations prohibit the initiation of telephone

20   solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47

21
     C.F.R. § 64.1200(c)(2).
22

23       16.      A person whose number is on the Registry, and who has received more than

24   one telephone call within any twelve-month period by or on behalf of the same entity in

25   violation of the TCPA, can sue the violator and seek statutory damages.   47 U.S.C. §

26   227(c)(5).

27       17.      The TCPA provides a private cause of action to persons who receive calls

28

                                            3

in violation of § 227(c) or any regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

18.     The regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. 47 C.F.R. § 64.1200(c)(2)(ii). That agreement must also include the telephone number to which the calls may be placed. Id.

19.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(l)(B).

20.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

21.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

22.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Red. 14014,

1  141151165 (2003).

2     23.    The FCC requires "prior express written consent" for all autodialed or

3  prerecorded telemarketing robocalls to wireless numbers and residential lines. In

4  particular:[A] consumer's written consent to receive telemarketing robocalls must be signed

5  and be See Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a

6  Jtme 26, 2003 FCC order). sufficient to show that the consumer: (1) received  clear and

7  conspicuous  disclosure of the consequences of providing the requested consent, i.e., that

8  the consumer will receive future calls that deliver prerecorded messages by or on behalf of

9  a specific seller; and (2) having received this information, agrees unambiguously to

10 receive such calls at a telephone number the consumer designates. In addition, the written

11 agreement must be obtained without requiring, directly or indirectly, that the agreement be

12
13 executed as a condition of purchasing any good or service.

14    24.    In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot.

15 Act of  1991, 27 FCC Red. 1830, 1844 ,i 33 (2012) (footnote and internal quotation marks

16 omitted). FCC regulations "generally establish that the party on whose behalf a solicitation

17 is made bears ultimate responsibility for any violations." In the Matter of Rules and

18 Regulations Implementing the Tel. Consumer Prot. Act of 1991, 1 O FCC Red. 12391,

19
20 12397 ii 13 (1995).

21    25.    The FCC confirmed this principle in 2013, when it explained that "a seller ...

22 may be held vicariously liable under federal c01mnon law principles of agency for

23 violations of either section 227(b) or section 227(c) that are committed by third-party

24 telemarketers." In the Matter of the Joint Petition Filed by Dish Network, LLC, 28 FCC

25 Red. 6574, 6574 ,r 1 (2013).

5

**Factual Allegations**

26.     Plaintiff MARK AUSSIEKER's phone number ending in 8006 was added to the Do Not Call list in February 2003.

27.     PLAINTIFF does not have a "landline" and primarily uses his cell phone. There is an "office phone" in the office.

28.     Card Services is the bane of telemarketing calls for many consumers. These are calls long since described by the FTC as fraudulent, misleading, and offering false promises and exaggerated claims to consumers. These scams have taken place for years and continue to this day with one minor adjustment, Lee from "account services" has replaced Rachel from "card services"

29.     Mr. Aussieker received multiple calls from a variety of spoofed caller ID's that contained a pre-recorded message and were initiated using an automated telephone dialing system. The calls purported to offer a zero interest rate credit card, but they ended up being for debt settlement services of the above named entities and individuals.

30.     To best of plaintiffs recollection, all of the calls promoted rates as low as Zero percent and purported to be from a "licensed non-profit agency"

31.     A voicemail left on May 9th, 2019 was left from a "licensed non-profit agency". American Consumer Rights Organization is registered as a non-profit in the State of Tennessee.

32.     The contract sent to Plaintiff is from American Consumer Rights Organization, and the Erik Nelson claimed to have worked for ACRO.

33.     Most of the calls had a small delay of 3-4 seconds of dead air before the pre-recorded message began indicating the calls were initiated using an ATDS. One of the voicemails repeated itself the pre-recorded message twice. The Plaintiff recieved calls directly

6

from Erik Nelson (see Ex A, and B) The Plaintiff communicated with the defendants and gave the name of "Mark Aussieker", this is the name reflected in the paperwork.

34.     Beginning in May of, 2019 DEFENDANTS undertook the misguided effort to solicit Mark AUSSIEKER on his cellular phone.

35.     During and/or in regard to the calls, Defendant knowingly and/or willfully:

   o   Called MARK AUSSIEKER's cellular telephone without Plaintiff's prior express consent or approval

   o   used an "automatic telephone dialing system" as defined by 47 U.S.C. § 227(a)(1) to place its call to Plaintiff seeking to solicit its services.

   o   Defendant Failed to check Plaintiffs name and telephone number(s) on its Do-Not-Call List

   o   Played a pre-recorded message where the plaintiff had to press a button to be connected to a live operator.

   o   Manipulated the caller-id displayed to show telephone numbers that appeared to be similar to plaintiffs own telephone number.

   o   A pause and pre-recorded message is indicative of the use of an autodialer.

| Date (-07:00) | Time (-07:00) | Phone # | Type |
|---|---|---|---|
| 2-May-19 | 7:41 AM | (916) 705-2736 | Incoming call |
| 2-May-19 | 8:40 AM | (916) 705-4394 | Incoming call |
| 3-May-19 | 7:23 AM | (916) 705-1613 | Incoming call |
| 3-May-19 | 9:37 AM | (916) 705-2522 | Incoming call |
| 3-May-19 | 11:28 AM | (916) 705-6957 | Missed call |
| 3-May-19 | 8:22 AM | (916) 705-9945 | Incoming call |
| 6-May-19 | 8:03 AM | (916) 705-3012 | Incoming call |

| | | | |
|---|---|---|---|
| 6-May-19 | 1:44 PM | (916) 705-5171 | Incoming call |
| 7-May-19 | 9:13 AM | (916) 705-6050 | Incoming call |
| 8-May-19 | 7:40 AM | (916) 705-3670 | Incoming call |
| 8-May-19 | 1:51 PM | (916) 705-8264 | Incoming call |
| 9-May-19 | 9:22 AM | (916) 705-5862 | Missed call |
| 9-May-19 | 12:28 PM | (916) 705-7680 | Incoming call |
| 10-May-19 | 9:23 AM | (916) 705-2365 | Incoming call |
| 10-May-19 | 8:14 AM | (916) 705-3674 | Incoming call |
| 10-May-19 | 8:29 AM | (844) 228-4869 | Incoming call |
| 12-May-19 | 12:18 PM | (916) 705-1648 | Missed call |
| 13-May-19 | 2:19 PM | (916) 705-5987 | Incoming call |
| 13-May-19 | 10:04 AM | (916) 705-6593 | Incoming call |
| 13-May-19 | 10:56 AM | (763) 200-2179 | Incoming call |
| 13-May-19 | 10:54 AM | (888) 622-1629 | Incoming call |
| 13-May-19 | 10:46 AM | (800) 945-2000 | Incoming call |
| 13-May-19 | 10:34 AM | (800) 945-2000 | Incoming call |

36.     PLAINTIFFS never consented to receive these calls.

37.     DEFENDANTS called 23 times. Plaintiff received multiple calls from multiple spoofed  working and non working caller ID's all designed to trick consumers into picking up the phone by using false, misleading, and fraudulent caller ID's. These calls were not related to an emergency purpose or any consent provided by the Plaintiff. The Plaintiff alleges a total of 23 calls. On calls 22 and 23, Defendant manipulated its caller id to be from "Chase card services".  The majority of the other calls were manipulate to real working

8

1   numbers.

2       38.    **One call was from** (916) 705-3674 **to 916-705-8006 on 5/10/2019 and**

3   **contained a pre- recorded message and was initiated by an automated telephone dialing**

4   **as indicated by a brief delay of dead air when the call first connected. This call**

5

6   **contained a pre- recorded message which stated: " Hi,** This is Lee from account services

7   calling in reference to your current credit card accounts. Thanks to the government's plan,

8   credit card interest rates are the lowest they've been in thirty years. This message is your

9   official notification that you have been approved by a license nonprofit agency to lower your

10  interest rates to as low as 0%, press 5 to speak ..."

11      39.    The Plaintiff spoke with an unknown agent with a thick foreign accent who

12  claimed that he was with "account services"  and could lower the Plaintiffs credit card  rates

13

14  to 0%.

15      40.    The 3674 number is a working number  and is assigned to Mr. K** C****Y.

16  The number was picked specifically because it is very similar to the Plaintiffs actual phone

17  number of 8006 and is called "Neighborhood spoofing" designed to trick consumers into

18  picking up the call as it appears to be a local call. Upon further conversation with the

19  representative who had a thick foreign accent and sounded as if he was calling from

20  overseas, the Plaintiff was transferred live to a "verification" rep and then finally to an agent

21  who stated he was with ARCO, (American Consumer Rights Organization) The Plaintiff

22  gave agent his name in order to track and associate all future calls to these telemarketers. The

23  agents referred the Plaintiff to Erik Nelson, who said he was..

24

25      41.    Mr. Nelson sent a proposal to Mr. Aussieker email address where for a fee of

26  $2,971, Mr. Aussieker would stop paying his credit card and plaintiff would have his entire

27  debt discharged (See ex A).

28

9

42.     Mr. Nelson kept bugging Mr. Aussieker for immediately returning the contract and called Mr. Aussieker 4 times. On one of the calls Mr. Nelson asked Mr. Aussieker if he had just ordered a new card. Mr. Aussieker thought this was odd and called his credit card company. Upon calling customer service, and prior to entering any information, a message played "Are you calling in reference to your recently replaced card". Mr. Aussieker realized that Mr. Nelson had spoofed his caller id to pretend to be Plaintiff.

43.     MR. AUSSIEKER devised a plan whereby he would purchase his own 800 and create an IVR system, and tell Mr. Nelson that he had an additional credit card. Thereafter he would give Mr. Nelson the 800 #. On May 13th, Mr. Nelson fell for the plan and called Plaintiffs 800#. Call records show two calls were placed to 800-368-4402 from 916-705-8006. These calls were not made by plaintiff.



44.     Plaintiffs are self-interested and have been recruited by the reward congress has offered to them. See 47 U.S.C. § 227(b)(3), (c)(5) (providing for recovery of $1500 per violation in case brought by consumer)

45.     Mr. Aussieker's concrete injury as it relates to the *Spokeo* decision is loss of productivity for answering the call, decreased battery life, could not watch television while

1  or use his cell phone while Defendant furthered his commercial interests, the nuisance of

2  receiving a telephone call and having to wait for the other party to pick up the phone,

3  defendants bothering him with unrequested solicitations, DEFENDANT tricking plaintiff

4  into answering the call by spoofing a phone number that was close to Plaintiffs.

5

6       46.

7

8

9

10                    CAUSES OF ACTION

11

12

13                        COUNT 1

14  **(1st call - Violation of the Telephone Consumer Protection Act, 47 U.S.C.**

15                        **§227(c)(5)(B)**

16  63. Plaintiff hereby incorporates, as if fully rewritten herein, all foregoing paragraphs.

17
18  64. Defendant's own conduct and/or by the fact that others made those calls on its behalf,

19  ignoring the Do-Not-Call List, as demonstrated by Defendant's Call to Plaintiffs cell

20  phone, violated 47 U.S.C.§227(c)(5)(B) and 47 C.F.R. §64.1200(d)(6) and, therefore,

21  Plaintiff is entitled to an award of statutory damages in the minimum amount of $500 for

22  this violation.

23
24  65. Defendant's own conduct and/or by the fact that others made those calls on its behalf,

25  in failing to check the numbers against a cell phone list constitutes a knowing and/or willful

26  violation of 47 U.S.C. §227(c)(5)(B) and 47 C.F.R. §64.1200(d)(2) . Furthermore,

27  Defendant's conduct, in placing the Call to Plaintiff's cell phone, spoofing the caller id,

28

                                11

giving false name of the party calling , not disclosing the true name, telephone number and address of the business constitutes a knowing and/or willful violation of 47 C.F.R.§64.1200(b)(2) and 47 C.F.R. §64.1200(d)(4) and therefore, Plaintiff is entitled to an award of statutory treble damages in the amount of $1,500 for this violation.

## COUNT 2

### (1st call - Violation of the Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(A)(iii) – Auto Dialer

66. Plaintiff hereby incorporates, as if fully rewritten herein, all foregoing paragraphs.

67. Defendant's own conduct (b) by the fact that others made those calls on its behalf by placing a Call to Plaintiff's cell phone using an automated dialing system, violated 47 C.F.R. § 64.1200(a)(2) and 47 U.S.C. § 227(b)(1)(A)(iii) and, therefore, Plaintiff is entitled to an award of statutory damages in the minimum amount of $500 for this violation.

68. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT 3

### (1st call - Violation of the Telephone Consumer Protection Act, 47 U.S.C. §227(b)(1)(A)(iii) – Pre recorded message

69. Plaintiff hereby incorporates, as if fully rewritten herein, all foregoing paragraphs.

70. Defendant's own conduct (b) by the fact that others made those calls on its behalf by placing a Call to Plaintiff's cell phone and playing a pre-recorded message, violated 47

C.F.R. § 64.1200(a)(2) and 47 U.S.C. § 227**(b)(1)(A)(iii)** and, therefore, Plaintiff is entitled to an award of statutory damages in the minimum amount of $500 for this violation.

71. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff is entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B) and 47 U.S.C. § 227(b)(3)(C).

## COUNT 4

### Unlawful Recording and Intercepting of Communications against Defendants
### 1st call (Violation of California Penal Code § 632.7)

37.     PLAINTIFF MARK AUSSIEKER incorporates each allegation set forth above as if fully set forth herein and further alleges as follows.

38. Plaintiff participated in calls that he received while within the State of California and that originated by and through defendants call centers. Plaintiff used a cellular telephone to engage in those conversations. Plaintiff is informed and believes and on that ground alleges that, at all relevant times,

39. Defendants and their vendor, had a policy and practice of using hardware and/or software that enabled them to surreptitiously record and/or monitor conversations with Plaintiff who used cellular or cordless telephones to receive calls from defendant.

40. Defendants and their vendor, had and followed a policy and practice of not disclosing to Plaintiff that their cellular calls were recorded and/or monitored, Defendants and their vendor, did not obtain, and could not have obtained, express or implied advance consent to the recording or monitoring of those conversations. As a result, plaintiff had an objectively reasonable expectation that their calls were not being recorded and/or monitored. That

expectation and its objective reasonableness arise, in part, from the objective offensiveness of surreptitiously recording people's conversations, the absence of even a simple pre-recorded message as short as four simple words – "calls may be recorded" – and the ease with which such a message could have been put in place. As the California Supreme Court has stated, "in light of the circumstance that California consumers are accustomed to being informed at the outset of a telephone call whenever a business entity intends to record the call, it appears equally plausible that, in the absence of such an advisement, a California consumer reasonably would anticipate that such a telephone call is not being recorded, particularly in view of the strong privacy interest most persons have with regard to the personal financial information frequently disclosed in such calls." (See Kearney v. Salomon Smith Barney (2006) 39 Cal. 4th 95.)

41.  Defendants' conduct as described above violated California Penal Code § 632.7(a).Under Penal Code § 637.2, Plaintiff are entitled to $5,000 in statutory damages per violation, even in the absence of proof of actual damages, the amount deemed proper by the California Legislature.

## COUNT 5

### Unlawful Interception of Communications against Defendants

### (Violation of California Penal Code § 632.7)

37.     PLAINTIFF MARK AUSSIEKER incorporates each allegation set forth above as if fully set forth herein and further alleges as follows.

38.  Plaintiffs credit card company has associated his telephone number of  916-705-8006 to plaintiffs account since plaintiff owns and controls that telephone number.  Plaintiffs credit

card has a feature where plaintiff can call an 800# and hear an automated report which contains the current balance, date of last payment, credit line, available credit.  The credit card company uses the caller id to asscociate the caller to proper account.

39. Defendants and their vendor, had a policy and practice of using hardware and/or software that enabled them to surreptitiously manipulate the caller id displayed to the calling party.

40. Defendants and their vendor, had a policy and practice of using hardware and/or software that enabled them to surreptitiously impersonate plaintiffs phone number and would call plaintiffs credit card company and represent to plaintiffs credit card company that plaintiff was calling from plaintiffs telephone number.

41. Defendants and their vendor, had a policy and practice of obtaining plaintiffs account balance, date of last payment, credit line, available credit by impersonating plaintiff to plaintiffs credit card company.

42. Defendants  policy and practice to surreptitiously impersonate plaintiff as to learn the contents of the report which was tranmistted over the phone lines, made willfully and without the consent of all parties, in order or to learn the contents of the automated report of current account status while the same is in transit or passing over any wires and that the unauthorized connection made with the spoofed caller id violated California Penal Code § 631.

43. Defendants' conduct as described above violated California Penal Code § 631.Under Penal Code § 637.2, Plaintiff are entitled to $5,000 in statutory damages per violation, even in the absence of proof of actual damages, the amount deemed proper by the California Legislature

## COUNT 6

### Civil conspiracy to violate the Plaintiffs Privacy

37.   Plaintiffs incorporate herein by reference the preceding paragraphs as if fully set
      forth herein, and count against Erik Nelson, TRISTAR and BRUYETTE and
      ASSOCIATES.

38.   During all relevant times,  BRUYETTE and ASSOCIATES. were independent
      hired to get plaintiff to sign a contract that paid ACRO $7,596.

39.   Plaintiff alerted BRUYETTE that Mr. Erik Nelson had been caught fraudulently
      representing himself as Plaintiff to plaintiffs credit card company in order to steal
      of plaintiffs account information.

40.   Plaintiff BRUYETTE that the documents that they had requested Plaintiff to sign
      furthered the over act.  Plaintiff informed BRUYETTE that if Mr. Nelson was
      willing to lie about his identity to a credit card company, he might be lying about
      his company name.

41.   Plaintiff also alerted BRUYETTE that there were problems with the verification of
      authenticity on the forms that Plaintiff was asked to sign, like the exact same ip
      address was the same on two separate documents, the physical address is not the
      address on the Florida secretary of state website, it appeared that the electronic
      signature account was being shared with VAZQUEZ Solutions, the verification
      showed the signature package contained 17 pages, but only 8 were included,  that
      the document that was sent for signatures, would not need any signatures or
      initials.

42.  All that must be shown is that there was a single plan, that the alleged coconspirator

1    shared in the general conspiratorial objective, and that an overt act was committed in

2    furtherance of the conspiracy that caused injury to the complainant.  BRUYETTE did not

3    respond to plaintiffs concerns and canceled the signature package.

4

5

6

7                              **PRAYER FOR RELIEF**

8    WHEREFORE, Plaintiff requests judgment against COLE RUUD-JOHNSON AND  CV
     VENTURES, LLC,  jointly and severally for the following:

9

10

11          1.      Leave to amend this Complaint to name additional DOESs as they are

12   identified and to conform to the evidence presented at trial;

13          2.      A declaration that actions complained of herein by Defendants violate the

14

15   TCPA

16          3.      An injunction enjoining Defendants and their affiliates and agents from

17   engaging in the unlawful conduct set forth herein;

18          4.      An award of $1500 per call in statutory damages arising from the TCPA

19   intentional violations 47 U.S.C. §227(c)(5)(B)  (calling someone on the do not call list)

20   jointly and severally against the corporation and individual for 23 calls.

21

22          5.      An award of $1500 per call in statutory damages arising from the TCPA

23   intentional violations of 47 U.S.C. §227(b)(1)(A)(iii)(playing pre-recorded message)

24   jointly and severally against the corporation and individual for 23 calls.

25          6.      An award of $1500 per call in statutory damages arising from the TCPA

26   intentional violations 47 U.S.C. §227(b)(1)(A)(iii) **(using an auto dialer)** jointly and

27   severally against the corporation and individual for 23 calls.

28

7.    An award of $5000 per violation in statutory damages arising from the unlawful recording of calls (Penal code 632.7).

8.    An award of $5000 per violation in statutory damages arising from the learning of plaintiffs credit card balance information by pretending to be plaintiff.

9.    An award to Mr. Aussieker of interest, costs. allowed by law and equity

10.    Such further relief as the Court deems necessary, just, and proper.

Respectfully Submitted this 14th Day of May, 2019.

Certification and Closing Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.
Date of signing: 14th Day of May, 2019
Signature of Plaintiff

Printed Name of Plaintiff _Mark Aussieker_____

Date of signing: 14th Day of May, 2019
Signature of Plaintiff

DocuSign Envelope ID: 86210949-3D85-4900-BEFC-F6A98224E6DA

# American Consumer Rights Organization

May 10, 2019

*Exhibit A*

Personal, Private & Confidential
Mark William Aussieker
8830 Olive Ranch Lane
Fair Oaks, CA 95628

Re:    Service Agreement between American Consumer Rights Organization and Mark William Aussieker.

Dear Mr. Aussieker,

Thank you for choosing our organization to assist you in connection with matters concerning the validation of your unsecured debt, and various matters related thereto (the "Validation"). This document confirms our agreement and establishes the scope and terms of our service. This signed document will constitute a "Service Agreement" between you (the "Consumer") and American Consumer Rights Organization ("ACRO").

WHEREAS, Consumer is the holder of those credit cards, accounts and/or debt to be validated that are itemized and set forth in exhibit "A" attached hereto (individually and collectively such items and accounts being the debt to validate).

1. Scope of Service:  Parties agree that, as of the date this Service Agreement is executed, Consumer has engaged ACRO to assist Consumer in the following capacities:
   (a) preparing documents to assist Consumer in securing necessary account information from third parties;
   (b) providing detailed analysis of related account documents submitted by Consumer;
   (c) determining which Consumer debts can be validated and which Consumer debts cannot be validated;
   (d) reviewing Consumer file to develop necessary strategies for Consumer, and,
   (e) utilizing best efforts to assist in resolving Consumer's unvalidated debt.

   Any activities other than those Services outlined above will be subject to additional fees that must be approved by the Consumer prior to additional Services being rendered.

   ACRO IS NOT A DEBT SETTLEMENT COMPANY NOR AN ADJUSTMENT SERVICE COMPANY. ACRO DOES NOT OFFER DEBT ADJUSTMENT SERVICES AND DOES NOT ENGAGE IN "DEBT NEGOTIATION" WITH CREDITORS. ACRO PROVIDES ONLY THE SERVICES OUTLINED IN THIS SECTION 1 TO ESTABLISH WHICH DEBT CAN BE VALIDATED BEFORE THEN USING ACRO'S BEST PROFESSIONAL EFFORTS TO ASSIST CONSUMER IN RESOLVING CONSUMER'S OWN UNVALIDATED DEBT.

   ACRO DOES NOT DIRECT CONSUMERS TO WITHHOLD PAYMENTS FROM CREDITORS.

_____**Consumer(s) initials**          _____**ACRO**

This Agreement and all information contained herein is "Confidential" and may not be duplicated, forwarded, published or distributed to any other person or entity.

DocuSign Envelope ID: 86210949-3D85-4900-BEFC-F6A98224E6DA

# American Consumer Rights Organization

ACRO DOES NOT SECURE CREDIT FOR CONSUMERS.

WHILE CONSUMERS MAY EXPERIENCE IMPROVEMENTS IN CREDIT HISTORY, CREDIT SCORE OR CREDIT RATING, ACRO DOES NOT OFFER SUCH SERVICES AND CONSUMERS SHOULD NOT ENGAGE ACRO TO ADDRESS ANY ISSUES RELEVANT TO CREDIT HISTORY, CREDIT SCORE OR CREDIT RATING.

2.  <u>Consumer Obligations</u>: Consumer agrees to the following:
    A. Consumer agrees to maintain and send to ACRO, on a monthly basis, an accurate and complete communications log detailing the name, telephone number, address, and nature of any conversation that Consumer may have with any person or entity concerning the debt listed on exhibit "A".
    B. Consumer agrees to communicate with ACRO concerning Consumer's receipt of any correspondence, mail, e-mail and/or any other communications concerning the debt, letters sent, or any other matter concerning this Agreement.
    C. CONSUMER AGREES (I) NOT TO INCREASE THEIR UNSECURED DEBT AND (II) NOT TO USE OR OTHERWISE INCREASE THE AMOUNTS PAYABLE IN CONNECTION WITH ANY ACCOUNT and/or CREDIT CARD THAT IS LISTED ON EXHIBIT "A" UNTIL THE EARLIER OF (a) TERMINATION OF THIS AGREEMENT or (b) THE DATE THAT CONSUMER RECEIVES WRITTEN NOTICE FROM ACRO INFORMING CONSUMER THAT CONSUMER MAY INCREASE THEIR UNSECURED DEBT and/or INCREASE THE AMOUNTS PAYABLE IN CONNECTION WITH THE ACCOUNTS and/or CREDIT CARDS LISTED ON EXHIBIT "A".
    D. Consumer agrees to immediately notify ACRO of any material changes to Consumer's personal life or any other changes that might affect ACRO's ability to communicate with Consumer, including but not limited to change of residence, job, telephone numbers, e-mail addresses or the like.
    E. Consumer agrees to immediately respond to ACRO's letters, telephone calls, e-mails or any other form of communications.

3.  <u>Term of Agreement</u>: This Agreement will take effect when Agreement is signed by both parties and will terminate upon the earlier of (i) eighteen (18) months following commencement or (ii) thirty (30) days following the date Services are completed.

4.  <u>Fees, Costs, and Expenses</u>: Upon execution of this Agreement, Consumer agrees to pay or hereby represents that Consumer has paid a fee in the amount of **$2,941.00** that is set out in the Fee appendix to this agreement. (the "Fee"). Consumer agrees to pay and understands and agrees that no services will be performed until the Fee has been paid.

_____**Consumer(s) initials**　　　　　_____**ACRO**

This Agreement and all information contained herein is "Confidential" and may not be duplicated, forwarded, published or distributed to any other person or entity.

Address: P.O. Box 1070, Locust Grove, GA 30248 | Phone: (888) 716-0454　　　rev032719

DocuSign Envelope ID: 86210949-3D85-4900-BEFC-F6A98224E6DA

5. Grounds to Terminate Agreement:
(a) Consumer may terminate this agreement at any time. If Consumer's request is prior to the expiration of the Term of Agreement, Consumer is not entitled to a refund of fees paid.
(b) ACRO may terminate this Agreement if, in ACRO's sole good faith determination, (i) Consumer has failed to fulfill any of Consumer's obligations under this Agreement; (ii) Consumer has breached any of Consumer's warranties and/or representations hereunder; (iii) for good cause or (iv) any other reason authorized by law to include if the client files bankruptcy. If this Agreement is terminated for any reason set forth in this Section 5(b), ACRO shall not be required to refund any of fees paid.

6. Confidentiality: The parties acknowledge and agree that each will be given access to certain items of Confidential Information (described below) to the other party, and that said Confidential Information is revealed by one party (the "Disclosing Party") to the other party (the "Receiving Party") in strict confidence solely for the purpose of facilitating the performance of this Agreement. Each party acknowledges and agrees that, without prior written consent of the other, neither party may use or disclose (to any person or entity that isn't a party to this Agreement) such Confidential Information in any manner at any time except as is reasonably necessary to further the purposes of this Agreement. Each party agrees and acknowledges that, if a violation of any part (including this paragraph) of the Agreement occurs or is threatened, such violation may cause irreparable harm to the offended party, that the remedy at law for any such violation or threatened violation may be inadequate and that the offended party shall be entitled to appropriate equitable relief, including, without limitation, injunctive relief against the breach of any part (including this paragraph) of the Agreement. For purposes of this Agreement, Confidential Information shall mean any proprietary information that is marked or otherwise identified by the Disclosing Party as confidential. Confidential Information shall also include information relating to each other's finances and business practices, the terms and conditions of this Agreement as well as the fact that the parties entered into this Agreement.
"Confidential Information" shall not include information that the Receiving Party can establish:
(a) was in the public domain at the time it was communicated to the Receiving Party by the Disclosing Party;
(b) entered the public domain subsequent to the time it was communicated to the Receiving Party by the Disclosing Party;
(c) was in the Receiving Party's possession, free of any obligation of confidence, at the time it was communicated to the Receiving Party by the Disclosing Party;
(d) was rightfully communicated to the Receiving Party by a third party, free of any obligation of confidence, subsequent to the time it was communicated to the Receiving Party by the Disclosing Party, or,
(e) was developed by employees or agents of the Receiving Party independently of any information communicated to the Receiving Party by the Disclosing Party.

_____**Consumer(s) initials**                          _____**ACRO**

This Agreement and all information contained herein is "Confidential" and may not be duplicated, forwarded, published or distributed to any other person or entity.

7. <u>Warranty and Representations</u>: Consumer warrants and represents that:

(i) Consumer has the right, power and authority to enter into the Agreement and to hire ACRO to render the Services;

(ii) all of the information and materials that Consumer furnishes or otherwise provides to ACRO is true, accurate and do not contain any false information or information that was created by ACRO;

(iii) all of the information and materials that Consumer furnish or otherwise provides to ACRO was prepared solely by Consumer without any assistance, mentoring or instructions by ACRO nor did ACRO engage in any activities or otherwise ask Consumer any questions that caused Consumer to change or otherwise alter the facts or circumstances that caused Consumer to enter into any validation of debt;

(iv) the terms, conditions and existence of this Agreement are confidential;

(v) at all times after the execution of Agreement, Consumer agrees to complete, follow and otherwise strictly comply (without change, alteration, amendment or the like) with each component, element and phase ACRO's directions, consultations, and/or instructions in a timely manner;

(vi) ACRO and Consumer are independent contracting parties, and nothing contained in this Agreement shall be deemed to create a partnership, joint venture or agency relationship between Consumer and ACRO; (vii) Consumer is not presently (nor has Consumer ever been at any time in the past) either employed, contracted by or an agent or representative of any person or entity engaged by, involved, associated or affiliated with (in any manner) the bank that issued the applicable credit card or any person or entity that is associated with the validation of debt;

(viii) Consumer will not increase the debt associated with any of the credit cards or accounts listed in Exhibit "A" hereto, and,

(ix) Consumer agrees that ACRO does not guarantee results for the Services rendered hereunder.

Consumer understands that the methods utilized by ACRO may have additional impact upon Consumer credit card utilization. It is possible, that as a result of one or more of ACRO's processes, Consumer may surrender certain rights with respect to the credit card. Consumer may be unable to request charge back of items on the card as a result of the various processes utilized by ACRO. This is a natural result and part of the card holder agreement with the card issuer. Once a card is terminated, no future charge backs may be honored or processed.

8. <u>Complete Agreement</u>: This Agreement contains the entire agreement of the parties with respect to the subject matter addressed, and all prior understandings and agreements, whether written or oral, between and among the parties relating to the subject matter of this Agreement are superseded by this Agreement. This Agreement is the only understanding and agreement by and between the parties. Each party specifically acknowledges, represents and warrants that they have not been induced to sign this Agreement by any belief that the other will waive or modify provisions of this Agreement in the future.

_____ **Consumer(s) initials**          _____ **ACRO**

This Agreement and all information contained herein is "Confidential" and may not be duplicated, forwarded, published or distributed to any other person or entity.

**Address: P.O. Box 1070, Locust Grove, GA 30248 | Phone: (888) 716-0454**          rev032719

DocuSign Envelope ID: 86210949-3D85-4900-BEFC-F6A98224E6DA

9. <u>Assignment Disallowed:</u>  This Agreement may not be assigned or transferred by Consumer but may be assigned by ACRO.

10. <u>Changes to this Service Agreement:</u>  No change or modification of this Agreement will be valid unless in writing and signed by the parties.

11. <u>Severability:</u>  The invalidity of unenforceability of a particular provision of this Agreement will not affect the other provisions hereof, and this Agreement will be construed in all respects as if such invalid or unenforceable provisions were omitted.

12. <u>No Waiver:</u>  Failure of either party to enforce any provision of this Agreement shall not constitute a breach thereof and shall not constitute a waiver of either party's right to enforce the other provisions hereof.

13. <u>Notices:</u> Any written notices which either party shall desire to give to the other hereunder shall be addressed to the applicable address set forth at the beginning of this Agreement until either party gives the other party written notice of a new address. All notices shall be in writing and shall be delivered by certified mail (return receipt requested), postage prepaid or by an established overnight courier. The date of mailing shall be deemed the date of service (except in respect to notice of change of address, which shall be effective upon receipt).

14. <u>Choice of Law:</u> This Agreement is entered into, governed by and construed in accordance with the laws of the State of Tennessee. Any and all disputes will be resolved in the State of Tennessee.

15. <u>Venue:</u>  Subject to the terms in Paragraph 16, any and all disputes shall be resolved in the Chancery Court of Williamson County, Tennessee.

16. <u>Arbitration:</u>  The ACRO and Consumer agree that any controversy or claim arising out of or relating to the Agreement or breach thereof shall be settled solely by arbitration in accordance with the Uniform Rules for Binding Arbitration in effect at the time of initiation of arbitration, and the judgment rendered by the arbitrator may be entered in any court having jurisdiction thereof and shall not be appealable.

17. <u>Miscellaneous:</u>

A. <u>Other Debt:</u> No earlier than one hundred twenty (120) days following the latter of (i) resolution of the unvalidated Debt contemplated in the Agreement or (ii) termination of the Term of this Agreement, Consumer may request that ACRO offer assistance with respect to the validation of Other Debt; provided, however, that Consumer shall enter into a new agreement with ACRO with respect to such Other Debt.

_____ **Consumer(s) initials**                    _____ **ACRO**

This Agreement and all information contained herein is "Confidential" and may not be duplicated, forwarded, published or distributed to any other person or entity.

**Address: P.O. Box 1070, Locust Grove, GA 30248 | Phone: (888) 716-0454**          rev032719

DocuSign Envelope ID: 86210949-3D85-4900-BEFC-F6A98224E6DA

# American Consumer Rights Organization

B. Approved Credit Monitoring Service: Consumer understands that it is the Consumer's responsibility to maintain a membership in good standing with CCS's credit monitoring services. Credit monitoring must be paid via ACH or electronic check to CCS who is a completely separate company that is not involved in ACRO's debt validation program as described in this agreement. The cost of monitoring is $20.00 per month for an individual or $35.00 per month for a couple.

IN WITNESS WHEREOF, the parties have executed this Agreement as of this day and year first above written

ACRO

By: _____        Consumer's Signature: _____

By: _____        Consumer's Signature: _____

| An Authorized Signatory of ACRO | Print Name: |
|---|---|
|  |  |

_____ **Consumer(s) initials**                    _____ **ACRO**

This Agreement and all information contained herein is "Confidential" and may not be duplicated, forwarded, published or distributed to any other person or entity.

**Address: P.O. Box 1070, Locust Grove, GA 30248 | Phone: (888) 716-0454**          **rev032719**

DocuSign Envelope ID: 86210949-3D85-4900-BEFC-F6A98224E6DA

# American Consumer Rights Organization

## CREDIT CARD AUTHORIZATION FORM

Credit Care Type:     o  Visa     o  MasterCard     o  American Express     o  Discover

Credit Card Number – **4246-3152-3967-3096**
Expiration Date – **01/23**
CVC Code - **346**
Card Holder Name(s) – **Mark Aussieker**
Billing Address – **8830 Olive Ranch Lane**
City / State / Zip – **Fair Oaks, CA 95628**

| Payment |
| --- |
| Date:  **05/10/2019** |
| Amount:  **$2,941.00** |

This authorization is to remain in full force and effect until all amounts payable to us are paid in full or until any Agreement is terminated as provided above.  Any termination by Consumer shall not be effective until we have received written notification from the Consumer of his or her desire to terminate any Agreement. In the event that we will terminate any Agreement for appropriate causes, we will provide written notice to you of termination. Furthermore, if payments are not made by the scheduled due date, all services by will stop immediately and all monies will be non-refundable.

## THE CHARGE will Indicate, **"BLS Tristar Consumer Gro" call 1-888-622-1629**,
I also agree that I am responsible for 100% of the service fee.

I understand and agree that services will be rendered upon execution of these documents and payment. In the event that my credit or debit card issuing bank or entity disputes a transaction, without my prior consent, I agree to immediately advise them to discontinue the dispute or charge back. I understand and agree that services will be rendered upon execution of these documents and payment. In the event that my credit or debit card issuing bank or entity disputes a transaction, without my prior consent, I agree to immediately advise them to discontinue the dispute or charge back. As the card holder and Consumer, I also understand and agree that the nature of the services is such that completion of the agreed upon goals could require eight to ten months to complete. Accordingly, in the event of any termination, for any reason, Consumer understands that company is entitled to a significant portion of any fee charged as consideration for its time.

Account Holders' Name  **Mark William Aussieker**         _____
                                        Print Name                                              Consumer Signature

Date of Authorization **05/10/2019**

_____**Consumer(s) initials**                          _____**ACRO**

This Agreement and all information contained herein is "Confidential" and may not be duplicated, forwarded, published or distributed to any other person or entity.

**Address: P.O. Box 1070, Locust Grove, GA 30248 | Phone: (888) 716-0454          rev032719**

DocuSign Envelope ID: 86210949-3D85-4900-BEFC-F6A98224E6DA

## FEE EXHIBIT

| Merchant | Card Number | Fee charged |
|---|---|---|
| *BLS Tristar Consumer Gro | 4246-3152-3967-3096 | $2,941.00 |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

_____Consumer(s) initials                    _____ACRO

This Agreement and all information contained herein is "Confidential" and may not be duplicated, forwarded, published or distributed to any other person or entity.

**Address: P.O. Box 1070, Locust Grove, GA 30248 | Phone: (888) 716-0454**          rev032719

**DocuSign** ●SECURED

## Certificate Of Completion

Envelope Id: 862109493D854900BEFCF6A98224E6DA
Subject: Please DocuSign: Mark William Aussieker Agreement.docx
Source Envelope:
Document Pages: 17                     Signatures: 0
Certificate Pages: 4                   Initials: 0
AutoNav: Enabled
EnvelopeId Stamping: Enabled
Time Zone: (UTC-08:00) Pacific Time (US & Canada)

Status: Delivered

Envelope Originator:
Roy Bruyette
3614 cuddleston court
Orlando, FL 32817
bruyetteassociates@gmail.com
IP Address: 108.188.77.100

### Record Tracking

Status: Original
          5/10/2019 9:01:39 AM

Holder: Roy Bruyette
          bruyetteassociates@gmail.com

Location: DocuSign

| Signer Events | Signature | Timestamp |
|---|---|---|
| Mark William Aussieker<br>aussieker1@gmail.com<br>Security Level: Email, Account Authentication (None)<br><br>**Electronic Record and Signature Disclosure:**<br>  Accepted: 5/10/2019 9:04:51 AM<br>  ID: d64ec760-7411-4809-beea-2f248c5fdd42 | | Sent: 5/10/2019 9:02:51 AM<br>Viewed: 5/10/2019 9:04:51 AM |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 5/10/2019 9:02:51 AM |
| Certified Delivered | Security Checked | 5/10/2019 9:04:51 AM |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

Electronic Record and Signature Disclosure created on: 5/26/2017 2:12:27 PM
Parties agreed to: Mark William Aussieker
Case 2:19-cv-00868-MCE-DB  Document 1  Filed 05/15/19  Page 28 of 30

**CONSUMER DISCLOSURE**

From time to time, Vazquez Solutions (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign, Inc. (DocuSign) electronic signing system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to these terms and conditions, please confirm your agreement by clicking the â€˜I agreeâ€™ button at the bottom of this document.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after signing session and, if you elect to create a DocuSign signer account, you may access them for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. To indicate to us that you are changing your mind, you must withdraw your consent using the DocuSign â€˜Withdraw Consentâ€™ form on the signing page of a DocuSign envelope instead of signing it. This will indicate to us that you have withdrawn your consent to receive required notices and disclosures electronically from us and you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures

electronically from us.
**How to contact Vazquez Solutions:**
You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
 To contact us by email send messages to: wilfredoamps@gmail.com

**To advise Vazquez Solutions of your new e-mail address**
To let us know of a change in your e-mail address where we should send notices and disclosures electronically to you, you must send an email message to us at wilfredoamps@gmail.com and in the body of such request you must state: your previous e-mail address, your new e-mail address. We do not require any other information from you to change your email address..
In addition, you must notify DocuSign, Inc. to arrange for your new email address to be reflected in your DocuSign account by following the process for changing e-mail in the DocuSign system.
**To request paper copies from Vazquez Solutions**
To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an e-mail to wilfredoamps@gmail.com and in the body of such request you must state your e-mail address, full name, US Postal address, and telephone number. We will bill you for any fees at that time, if any.
**To withdraw your consent with Vazquez Solutions**
To inform us that you no longer want to receive future notices and disclosures in electronic format you may:

> i. decline to sign a document from within your DocuSign session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;
> ii. send us an e-mail to wilfredoamps@gmail.com and in the body of such request you must state your e-mail, full name, US Postal Address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

| Operating Systems: | Windows® 2000, Windows® XP, Windows Vista®; Mac OS® X |
|---|---|
| Browsers: | Final release versions of Internet Explorer® 6.0 or above (Windows only); Mozilla Firefox 2.0 or above (Windows and Mac); Safariâ„¢ 3.0 or above (Mac only) |
| PDF Reader: | Acrobat® or similar software may be required to view and print PDF files |
| Screen Resolution: | 800 x 600 minimum |
| Enabled Security Settings: | Allow per session cookies |

** These minimum requirements are subject to change. If these requirements change, you will be asked to re-accept the disclosure. Pre-release (e.g. beta) versions of operating systems and browsers are not supported.
**Acknowledging your access and consent to receive materials electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please verify that you were able to read this electronic disclosure and that you also were able to print on paper or electronically save this page for your future reference and access or that you were able to e-mail this disclosure and consent to an address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format on the terms and conditions described above, please let us know by clicking the â€˜I agreeâ€™ button below.

By checking the â€˜I agreeâ€™ box, I confirm that:

- I can access and read this Electronic CONSENT TO ELECTRONIC RECEIPT OF ELECTRONIC CONSUMER DISCLOSURES document; and

- I can print on paper the disclosure or save or send the disclosure to a place where I can print it, for future reference and access; and

- Until or unless I notify Vazquez Solutions as described above, I consent to receive from exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to me by Vazquez Solutions during the course of my relationship with you.